## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRITEK INTERNATIONAL INC., *et al.*,[1] | Case No. 23-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL SUPPLIERS, LOGISTICS CLAIMANTS, PASA CLAIMANTS AND SECTION 503(B)(9) CLAIMANTS; AND (II) GRANTING RELATED RELIEF

By this motion (this "<u>Motion</u>"), Tritek International Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>"), as debtors and debtors in possession (collectively, "<u>Debtors</u>"), respectfully represent as follows:

### RELIEF REQUESTED

1.     By this Motion, and pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "<u>Proposed Interim Order</u>") and **Exhibit B** (the "<u>Proposed Final Order</u>"), respectively, (i) authorizing, but not directing, Debtors, in their sole discretion, to pay prepetition claims (collectively, the "<u>Critical Vendor Claims</u>") held by Critical Suppliers, Logistics Claimants, PASA Claimants, and Section 503(b)(9) Claimants

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Tritek International Inc. (7919); HyLife Foods Windom, LLC (5391); and Canwin Farms, LLC (3973).  Debtors' mailing address is 2850 Highway 60 East, Windom, MN 56101.

(each as defined below, and collectively, the "Critical Vendors") in an aggregate amount not to exceed $3,200,000 on an interim basis (the "Interim Cap") and $3,750,000 on a final basis (the "Final Cap"); and (ii) granting related relief.

2.        Debtors believe that having the authority to pay the Critical Vendors in an amount not to exceed the Interim Cap pursuant to the Proposed Interim Order is the minimum amount of relief necessary to avoid immediate and irreparable harm.  In addition, Debtors are seeking authorization to pay the Critical Vendors in an amount not to exceed the Final Cap on a final basis pursuant to the Proposed Final Order.

## JURISDICTION AND VENUE

3.        The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.        Pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

5.        The statutory bases for the relief requested herein are sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A.     General Background**

6.     On the date hereof (the "Petition Date"), Debtors each commenced a bankruptcy case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  Debtors have requested that the Chapter 11 Cases be jointly administered.

7.     Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases as of the date of this Motion.

9.     Debtors comprise three entities that form an integrated operation for the raising, production and sale of pork products.  Their operations involve all aspects and stages of the pork production process, including the farming and sourcing of hogs, the processing and packaging of pork at their state-of-the-art processing facility, and the marketing and sale of such products throughout premium domestic and international end markets, primarily in the United States, Canada, Japan, Korea, and China.

10.     Debtors have been experiencing significant operating losses over the past approximately two years due to a confluence of factors, including, among other things, COVID-related disruptions, unfavorable commodity pricing dynamics, and unfavorable foreign exchange pricing in connection with international sales, resulting in a significant impairment of Debtors' anticipated export revenues.  Debtors filed these Chapter 11 Cases to pursue a restructuring of their balance sheets and operations and are actively marketing the business and assets to potential going-concern buyers.

3

11.     Additional information regarding Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases, is set forth in the *Declaration of Grant Lazaruk in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.

**B.     Overview of the Critical Vendors**

12.     In their day-to-day operations, Debtors heavily rely on a number of suppliers and service providers.  Because Debtors' primary products are hogs processed at their facility for packaging, shipping and eventual consumption, Debtors necessarily rely on vendors such as suppliers of hogs, feed suppliers, manufacturers and servicers of equipment for their facilities, suppliers of certain custom-made packaging materials that are used to ship both unprocessed and processed products to their customers, and transportation carriers used to transport Debtors' pork products to their customers.  Debtors additionally depend on constant access to supplies of products and services such as vaccines, cold storage and refrigeration used to store and transport Debtors' processed pork products, customer-specified ingredients for prepared pork products, and waste and sanitation services required by the United States Department of Agriculture (the "U.S.D.A.").

13.     Debtors interact with numerous vendors.  A number of these vendors possess claims that are or may be (i) related to goods or services that are essential to Debtors' business that require frequent deliveries and quick turnover of goods sold, (ii) entitled to possessory liens for goods in transit, (iii) a statutory trust for goods delivered to Debtors, and/or (iv) entitled to priority under

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

section 503(b)(9) of the Bankruptcy Code.  Due to the nature of Debtors' business that requires frequent deliveries and quick turnover of goods sold, a very significant amount of the creditors affected by this Motion will fall into more than one of the foregoing categories.

14.     Debtors propose to undergo a stringent analysis, together with their advisors, to determine which vendors fall into these categories and the extent to which each vendor is critical to the ongoing operations of Debtors' businesses.  Debtors propose to undertake a reconciliation of such claims, and in their discretion and in accordance with their business judgement, determine which of these claims should be currently satisfied and whether or not the payment of such claims should be contingent on the extension of favorable business terms.

15.     As part of their cash management system, Debtors maintain bank accounts at various banks and other financial institutions (collectively, the "Banks"), and Debtors draw upon funds in their accounts at the Banks to satisfy their obligations to the Critical Vendors.  Debtors request that this Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested, to the extent that such checks or electronic fund transfers relate to Debtors' obligations to the Critical Vendors.

(1)     Critical Suppliers

16.     Debtors have identified certain vendors that provide critical services, inventories, goods and other supplies that are vital to Debtors' operations and continuing ability to provide top-quality service to their customers (the "Critical Suppliers").  In the ordinary course, the Critical Suppliers provide goods and services that relate to numerous aspects of Debtors' operations.  Debtors have suppliers and service providers that either (i) are sole source providers, or (ii) provide goods or services where the expected costs and related losses that would be incurred from changing suppliers are higher than the outstanding prepetition payments to such vendors.  Debtors believe

5

that without access to the range of goods and services provided by the Critical Suppliers, Debtors will not be able to substantially operate their business.

17.    Interruption of delivery of key goods could severely disrupt Debtors' operations and could potentially cause irreparable harm to their business, goodwill, customer base and market share.  Such harm would likely far outweigh the cost of payment of certain of the prepetition claims held by certain Critical Vendors and accrued in the ordinary course of business (collectively, the "Critical Supplier Claims").  Furthermore, the loss of trade terms (whether on account of demands for cash-in-advance, cash-on-delivery or otherwise) negatively impacts Debtors' liquidity.  Paying prepetition claims of Critical Suppliers on the terms discussed herein will allow Debtors to maintain stakeholder value.

18.    Accordingly, Debtors seek authority, but not direction, to pay and discharge, on a case-by-case basis, the Critical Supplier Claims.  Debtors intend to pay prepetition Critical Supplier Claims only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs to their estates.  To that end, in return for paying the Critical Supplier Claims, Debtors propose that they be authorized to require that the Critical Suppliers provide favorable trade terms for the postpetition delivery of goods and services. Specifically, Debtors propose to condition the payment of the Critical Supplier Claims upon the Critical Vendors' agreement to continue—or recommence—supplying goods and services to Debtors in accordance with trade terms at least as favorable as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place twelve (12) months prior to the Petition Date, or such other trade terms that are acceptable to Debtors in their discretion (the "Customary Trade Terms").

(2)    Logistics Claimants

19.    Debtors' business depends on the ability to receive goods necessary to produce a high-quality pork product and to deliver that product to their customers.  In that regard, Debtors routinely transact business with a number of third-party service providers who are responsible for shipping, storing, and facilitating the movement of goods to Debtors' facilities and to certain customer locations (collectively, the "Logistics Claimants").  Debtors rely on the Logistics Claimants to manage certain critical services, including by transporting live weaned and feeder hogs to and from certain Debtor entities, transporting Debtors' processed pork products to customers, and storing Debtors' pork products while in transit.  Accordingly, because the services provided by the Logistics Claimants are essential to Debtors' operations, it is essential that the commencement of these Chapter 11 Cases not give any of the Logistics Claimants any reason or excuse to cease performing.

20.    For several important reasons, Debtors seek to pay the prepetition amounts owed to the Logistics Claimants with respect to goods in transit.  The services provided by the Logistics Claimants are essential to Debtors' day-to-day operations, and they may possess essential goods in transit.  If the Logistics Claimants are not paid, they may refuse to perform additional services for Debtors.  In such event, Debtors would incur significant additional expenses, such as premium replacement shipping and storage costs, which would likely exceed the amount of unpaid prepetition storage and shipping charges that Debtors request the authority to pay hereunder.

21.    It is also anticipated that on the Petition Date, inventory may be in transit between a Debtor and non-Debtor affiliates, between a Debtor and its customers, and/or between a third-party supplier and Debtors.  It is possible that parties may refuse to release or complete delivery of goods absent payment from Debtors.

22.    In addition, non-payment of prepetition amounts due and owing to the Logistics Claimants (the "Logistics Claims") may result in many of the Logistics Claimants, who may have possession of Debtors' property, refusing to return such property absent payment of their prepetition claims.  Under certain state laws, to the extent Debtors have not paid for such services, a shipper or warehouseman may have a lien on the goods in its possession, which secures the charges or expenses incurred in connection with the transportation or storage of the goods.[3]  In addition, pursuant to section 363(e) of the Bankruptcy Code, the shippers, as bailees, may be entitled to adequate protection for any valid possessory lien.  Thus, to the extent any Logistics Claimant has perfected a lien on any of Debtors' property or its customers' property or, in Debtors' estimation, could assert and perfect a lien on any such property, it is imperative that Debtors be authorized to immediately pay such claim regardless of whether the Logistics Claimant's claim arose prior to or after the Petition Date to secure the release of any such lien and Debtors' continued uninterrupted access to the goods and services provided by such Logistics Claimant.

23.    Failure by any of the Logistics Claimants to process or complete delivery of goods or continue to provide shipping-related services to Debtors will cause irreparable harm to Debtors by interrupting Debtors' inventory chain and ability to sell products.

24.    Accordingly, Debtors seek authority, but not direction, to pay and discharge, on a case-by-case basis, the Logistics Claims.  Debtors intend to pay prepetition Logistics Claims only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs to their estates.

---

[3]    For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." U.C.C. § 7-307(a) (2021).

(3)    PASA Vendors

25.    Debtors regularly purchase hogs from hog supply vendors (collectively, the "PASA Vendors," and each, a "PASA Vendor") that may be eligible to assert claims (collectively, the "PASA Claims") under the Packers and Stockyards Act of 1921 (7 U.S.C. §§ 181-229c) ("PASA").  PASA protects unpaid sellers of livestock or poultry by imposing a statutory trust (the "PASA Trust") on a buyer's entire inventory of livestock and any related proceeds (the "PASA Trust Assets").  *See* 7 U.S.C. § 196.

26.    PASA Trust Assets are preserved as non-segregated floating trusts.  Courts in this district and other districts have consistently held that such assets are not property of a debtor's estate.  *See Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Estate)*, 405 B.R. 694, 697 (Bankr. D. Del. 2009); *In re Long John Silver's Rests., Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999) (in the context of Perishable Agricultural Commodities Act ("PACA") trusts); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993) (in the context of PACA trusts).  Courts have treated PASA Trusts and PACA trusts similarly, such that cases interpreting one type of trust may be instructive for cases interpreting the other type of trust.  *See CFP Liquidating Estate*, 405 B.R. at 697 n.3 ("[T]he provisions of PACA are sufficiently similar [to PASA] such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other.").  Thus, claims based on a PASA Trust must be satisfied ahead of the claims of any secured creditors holdings liens on a buyer's inventory or accounts receivable.  *See In re G&L Packing Co.*, 20 B.R. 789, 801 (Bankr. N.D.N.Y. 1982) ("Congress intended unpaid cash sellers to satisfy their claims from the packer's assets (inventoried livestock delivered by the cash seller and accounts receivable and other proceeds from the sale of such livestock) before satisfying any [Uniform Commercial Code] Article 9 perfected security interest in those assets."); *In re*

*Gotham Provision Co., Inc.*, 669 F.2d 1000, 1010 (5th Cir. 1982) ("Where the packer has given a lender a security interest in inventories or receivables that are subject to the [PASA] trust, the unpaid cash sellers have priority over those assets and may recover the proceeds of those receivables to the extent of the outstanding balance on the cash sales.").

27.     PASA requires that certain procedural steps be taken by a seller in order to preserve its rights as a trust beneficiary.  Specifically, a vendor must provide written notice to the Secretary of Agriculture and the purchaser of such goods of its intent to preserve the benefits of the PASA Trust within (i) thirty (30) days after the time payment is due, or (ii) fifteen (15) business days after the date on which the vendor receives notice that the payment instrument promptly presented for payment has been dishonored.  7 U.S.C. § 217b(b); s*ee CFP Liquidating Estate*, 405 B.R. at 697; *In re H.R. Hindle & Co., Inc.*, 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993) (in the context of PACA).  Beneficiaries of a PASA Trust that adhere to the statutory notice requirements are generally entitled to prompt payment from the PASA Trust Assets, as applicable, ahead of secured, priority, and unsecured creditors of a debtor's estate. *See Gotham Provision*, 669 F.2d at 1010; *H.R. Hindle*, 149 B.R. at 785.  However, a vendor's failure to comply with the notice requirements and therefore preserve the trust renders its claim a general unsecured claim in a debtor's chapter 11 case.

28.     Debtors believe that a significant portion of the hogs purchased from PASA Vendors may qualify for treatment under PASA.  As a result, insofar as those PASA Vendors abide by the notice requirements of PASA, such vendors will be eligible to assert PASA Claims granting them priority ahead of all other secured and unsecured creditors in the Chapter 11 Cases.  Accordingly, Debtors submit that payment of PASA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of Debtors.

29.    As of the Petition Date, Debtors estimate there are approximately $1,200,000 of PASA Claims outstanding for PASA goods delivered prior to the Petition Date.

30.    To the extent there are such claims, Debtors believe the PASA Claims relate to transactions where goods were received by Debtors prior to the Petition Date, and holders of PASA Claims who delivered goods to Debtors within twenty (20) days prior to the Petition Date in the ordinary course of business are also entitled to an administrative expense claim for the value of those goods under section 503(b)(9) of the Bankruptcy Code.

(4)    Section 503(b)(9) Claimants

31.    In the ordinary course of business, Debtors have claims on account of goods received by Debtors within twenty (20) days prior to the Petition Date (the "Section 503(b)(9) Claims"). Creditors holding such claims (collectively, the "Section 503(b)(9) Claimants") who do not have long-term contracts with Debtors may refuse to supply new orders without payment of their prepetition claims. Debtors also believe certain Section 503(b)(9) Claimants could reduce Debtors' existing trade credit—or demand payment in cash-on-delivery—further exacerbating Debtors' limited liquidity. Debtors believe that as of the Petition Date, they owe approximately $850,000 on account of goods delivered within the twenty (20) days prior to the Petition Date, the value of which may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.[4] While typically the Section 503(b)(9) Claimants would be required to file a motion or wait until a plan has been approved to receive payment of their administrative claims, Debtors believe that given (i) the administrative priority nature of these claims and (ii) the vital role that many, if

---

[4]    Debtors do not concede that any claims described in this Motion are conclusively entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, and Debtors expressly reserve the right to contest the extent or validity of all such claims.

not all, of these vendors will likely have in ensuring a smooth and value-maximizing sale process, it is in the best interest of their estates to pay these claims.

32.     Debtors intend to apply their business judgment and discretion on a case-by-case basis with respect to actual Section 503(b)(9) Claims paid under the requested authority. In particular, in analyzing whether payments should be issued to any individual Section 503(b)(9) Claimant, Debtors will focus on prioritizing the claims of Section 503(b)(9) Claimants that (i) provide unique and specialized goods that are otherwise not readily available; (ii) provide goods that Debtors are unable to procure without incurring significant migration costs, operational delays or compromising quality; (iii) do not have long-term written supply contracts such that the vendor could be compelled to continue providing goods or services in a timely and cost-efficient manner without unduly disrupting Debtors' operations postpetition; or (iv) provide goods that are impossible to replace.

33.     By this Motion, Debtors seek authority to pay, in their sole discretion and based on their business judgment, subject to the terms set forth herein, the Section 503(b)(9) Claimants on account of their prepetition claims.  Debtors do not seek to accelerate or modify existing payment terms with respect to the Section 503(b)(9) Claims.

## **BASIS FOR RELIEF**

### A.     The Court Should Authorize the Payment of Critical Vendor Claims.

34.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary, to protect and preserve the estate.  *See, e.g., Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of

prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of the Critical Vendor Claims as provided herein.

35.     Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

36.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 824-25.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs,* 98 B.R. at 176.

37.    Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

38.    Debtors' request for authority to pay certain Critical Vendor Claims as requested herein is appropriate and warranted under the circumstances.  The ability to pay certain Critical Vendor Claims will maintain the integrity of Debtors' operations and allow Debtors to efficiently administer the Chapter 11 Cases.  Debtors depend on the supply of goods and the provision of services by the Critical Vendors to sustain their operations.  Ensuring that Critical Vendors continue to supply and serve is therefore vital to the success of the Chapter 11 Cases and the ability of Debtors to remain a going-concern.

39.    The relief requested herein is well within the range of customary relief approved in this district.  Courts routinely authorize payment of prepetition claims for critical vendors in similar or greater amounts to that requested here.  *See, e.g., In re BL Rests. Holding,* LLC, No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) (authorizing payment of critical vendor claims); *In re RUI*

*Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Aug. 7, 2019) (same); *In re GST AutoLeather,*

*Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (authorizing payment of $6.0 million in

critical vendor claims); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 9, 2017)

(authorizing payment of critical vendors).[5]

40.     Based on these circumstances, Debtors submit that the relief requested herein

represents a sound exercise of Debtors' business judgment, is necessary to avoid immediate and

irreparable harm to Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of

the Bankruptcy Code.

**B.     The Court Should Authorize Payment of the Logistics Claims.**

41.     Sections 105(a) and 363(b) of the Bankruptcy Code also support the payment of

the Logistics Claims as provided herein.   Additionally, and as noted above, certain Logistics

Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens

on Debtors' goods in their possession (notwithstanding the automatic stay under section 362 of the

Bankruptcy Code) in an attempt to secure payment of their prepetition claim.  As described above,

under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent

consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic

stay.[6]

42.     Moreover, certain Logistics Claimants may have a lien on Debtors' products in their

possession to secure the charges or expenses incurred for transportation of the products. *See* U.C.C.

§ 7-307(a) (lien of shipper). The refusal of any Logistics Claimant shipper to perform their

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
       Copies of these orders are available upon request to Debtors' proposed counsel.

[6]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally
       applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires
       rights in such property before the date of perfection").

services could negatively impact Debtors' ability to maintain their day-to-day operations and harm Debtors' restructuring efforts.

43.    Section 506(a) of the Bankruptcy Code provides that a creditor's claims are treated as a secured claim to the extent of the value of any collateral.  *See* 11 U.S.C. § 506(a).  To the extent that a Logistics Claim is secured by a lien on assets of Debtors or a Logistics Claimant is entitled to assert possessory liens securing its claims under applicable state law, such Logistics Claimant is entitled to receive (i) payment in full of its prepetition claim pursuant to any confirmed plan or plans in these Chapter 11 Cases and (ii) the postpetition interest accruing on such claim to the extent such claim is oversecured.

44.    Debtors' request for authority to pay the Logistics Claims as requested herein is appropriate and warranted under the circumstances.  As set forth above, the Logistics Claimants could disrupt Debtors' business operations.  Failure to pay the Logistics Claims could materially jeopardize Debtors' operations by preventing Debtors from obtaining critical goods and selling Debtors' products to customers.

45.    The practical reality of Debtors' business operations makes the continued use of the Logistics Claimants' services all the more important.  In particular, Debtors, over their history of cooperation and work with the Logistics Claimants, have reached agreements which include lower shipping rates.  If Debtors were required to switch to different service providers, they would incur significant operations disruption and increased costs.  At the very least, replacing the Logistics Claimants, in most cases, would delay transportation and delivery of Debtors' products to customers.  If certain Logistics Claimants elect to stop working with Debtors, Debtors' products, which are perishable, will be halted and unable to reach customers, causing a strain on Debtors' business during an already difficult time.

16

46.    Where, as here, debtors have shown that the payment of prepetition claims is critical to maximizing the value of their estates, courts in this district have routinely authorized such payments.  *See, e.g., In re BL Rests. Holding,* LLC, No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) (authorizing payment of certain prepetition lien claims); In *re RUI Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Aug. 7, 2019) (same); *In re Am. Apparel, LLC*, No. 16-12551 (BLS) (Bankr. D. Del. Nov. 15, 2016) (same); *In re Pac. Sunwear of Calif., Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. Apr. 8, 2016) (same).[7]

47.    Based on these circumstances, Debtors submit that the relief requested herein represents a sound exercise of Debtors' business judgment, is necessary to avoid immediate and irreparable harm to Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

**C.    The Court Should Authorize Payment of PASA Claims.**

48.    The prompt and full payment of allowed PASA Claims should be authorized by this Court.  As described above, assets governed by PASA do not constitute property of Debtors' estates.  As a result, the distribution of assets to the holders of PASA Claims falls outside the priority scheme set forth in the Bankruptcy Code, and such holders are entitled to payment from the PASA Trust, ahead of Debtors' other creditors.  *Gotham Provision*, 669 F.2d at 1010; *H.R. Hindle*, 149 B.R. at 785 (in the context of PACA); *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1994) (in the context of PACA).

49.    Delays in satisfying amounts owed to PASA Vendors could adversely affect Debtors' ability to obtain the hogs necessary to produce Debtors' products.  Failing to pay allowed

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to Debtors' proposed counsel.

PASA Claims in the ordinary course of business could subject Debtors to numerous claims and contested proceedings by PASA Vendors for relief from the automatic stay and/or injunctive relief, which would result in the unnecessary expenditure of time, effort and money by Debtors.

50.     Lastly, in certain circumstances, officers or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA, a statute modeled on PASA and enacted to protect suppliers of perishable agricultural commodities. *See Bear Mountain Orchards v Mich-Kim, Inc.*, 623 F.3d 163, 172 (3d Cir. 2010) (explaining that a court must "1) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or controlling shareholder); and 2) assess whether that individual's involvement with the corporation establishes that she was actually able to control the PACA trust assets at issue"); *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005); *see also Golman Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (to determine personal liability, court will inquire (a) whether the individual's involvement with the corporation was sufficient to establish legal responsibility and (b) whether the individual, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors).  As described above, courts have noted that PACA trusts are similar to PASA trusts, and have looked to PACA to interpret matters involving PASA trusts. *See, e.g.*, *CFP Liquidating Estate*, 405 B.R. at 697 n.3 ("[T]he provisions of PACA are sufficiently similar [to PASA] such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other."); *Gen. Produce Co. v. Warehouse Markets, LLC*, No. 2:13-CV-00750, 2015 WL 3488250, at *2 n.4 (E.D. Cal. June 2, 2015).  Importantly, the Third Circuit has held that "individual liability [for D&O fiduciary breaches] in the PACA context is not derived from

the statutory language, but from common law breach of trust principles." *Weis-Buy Servs.*, 411

F.3d at 421.  Likewise, courts in other jurisdictions have held that an agent of a corporation, such

as a director or officer, can be held liable as a PASA "dealer" for violations of PASA

requirements.  *Abingdon Livestock Exchange, Inc. v. Smith*, 594 F. Supp.2d 688, 695 (W.D. Va.

2009) (citing *U.S. v. Agnew*, 878 F.2d 219, 220 (8th Cir. 1989) (holding that even if a dealer is

acting in the capacity of agent for a principal bonded in compliance with PASA, the unbonded

agent is not relieved from liability)).  Thus, to the extent that any valid obligations arising under

PASA remain unsatisfied by Debtors, it is possible that a Court may hold that Debtors' officers

and directors are subject to lawsuits during the pendency of the Chapter 11 Cases regardless of

the validity of such action.  Any such lawsuit would distract Debtors and their officers and

directors from the administration of the Chapter 11 Cases.

51.    Courts in this district have granted similar relief with respect to the treatment of

PASA Claims in other chapter 11 cases to the relief being requested herein.  *See, e.g., In re BL*

*Rests. Holding,* LLC, No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) (authorizing payment

of PACA/PASA claims); In *re RUI Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Aug. 7,

2019) (same); *RM Holdco LLC, et al.*, Case No. 18-11795 (MFW) (Bankr. D. Del. Sept. 5, 2018)

(same).[8]

**D.    The Court May Authorize the Payment of Claims Entitled to Administrative Expense**
**Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.**

52.    Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the

"value of any goods received by the debtor within 20 days before the date of commencement of a

case under this title in which goods have been sold to the debtor in the ordinary course of such

---

[8]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
Copies of these orders are available upon request to Debtors' proposed counsel.

debtor's business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Conversely, all creditors will benefit from the seamless transition of Debtors' operations into bankruptcy.

53.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As administrative claims incurred in the ordinary course of business, Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. The timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"). Moreover, courts have authorized payment of section 503(b)(9) claims at the beginning of chapter 11 cases if the debtor has both the ability and the need to pay them at that time. *See, e.g., In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Dec. 14, 2010 (interim order), Jan. 12, 2011 (final order)) (approving payment of claims under section 503(b)(9) as part of "first day" relief).

54.     Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the Section 503(b)(9) Claims—which merely accelerates the timing of payment and not the ultimate treatment of such claims—Debtors could be denied access to the goods necessary to maintain Debtors' business operations.

55.     In addition, courts in this district and others have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of

business.  *See, e.g.*, *In re BL Rests. Holding,* LLC, No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) (authorizing payment of 503(b)(9) claims); In *re RUI Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Aug. 7, 2019) (same); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. De. Del. Oct. 24, 2018) (same); *In re GST Autoleather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 13, 2017) (same); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. April 19, 2016) (same); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Jan. 11, 2016) (same).[9]

## E.     **Authorizing and Directing Banks is Appropriate.**

56.     Debtors also request that the Court authorize the Banks to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by Debtors related to, the claims that Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that funds are available in Debtors' accounts to cover the checks and fund transfers and that the Banks are authorized to rely on Debtors' designation of any particular check as approved by the Proposed Interim Order and the Proposed Final Order.

57.     Debtors have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court.  Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

## <u>RESERVATION OF RIGHTS</u>

58.     Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against Debtors; (ii) a waiver of Debtors' rights to dispute the amount of,

---

[9]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to Debtors' proposed counsel.

basis for, or validity of any claim against Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (iv) a promise to pay any claim; (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between Debtors and any third party under section 365 of the Bankruptcy Code; or (vi) otherwise affecting Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of Debtors' rights to subsequently dispute such claim.

## **DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(b)**

59.    Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003.  Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to Debtors, as described herein, and that Bankruptcy Rule 6003 has been satisfied.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

60.    Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that Debtors seek in this Motion is necessary for Debtors to operate without interruption and to preserve value for their estates.  Accordingly, Debtors respectfully request that the Court waive the 14-day stay imposed

by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

61.     Notice of this Motion and any order entered hereon will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) each of Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (iii) Stinson LLP and Womble Bond Dickinson (US) LLP, as counsel to the agent under Debtors' prepetition credit facility, (iv) any other parties having asserted liens against Debtors' assets, (v) the Office of the United States Attorney for the District of Delaware, (vi) the Internal Revenue Service, (vii) Squire Patton Boggs (US) LLP, Chipman Brown Cicero & Cole, LLP, Latham & Watkins LLP, and Richards, Layton & Finger LLP, as counsel to Debtors' investors, CPF Canada Holdings Corp. and Itochu Corporation, (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (ix) any other party entitled to notice pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, Debtors submit that no further notice is required.

## **NO PRIOR REQUEST**

62.     No prior request for the relief sought herein has been made by Debtors to this or any other court.

*[Remainder of Page Left Blank Intentionally]*

23

WHEREFORE, Debtors respectfully request that the Court (i) enter the Proposed Interim

Order and Proposed Final Order in substantially the forms attached hereto and (ii) grant such other

and further relief as may be just and proper.

Dated: April 27, 2023                  Respectfully submitted,
       Wilmington, Delaware

                                */s/ L. Katherine Good*

Jerry L. Hall (*pro hac vice* pending)      Jeremy W. Ryan (No. 4057)
Michael E. Comerford (*pro hac vice* pending)   L. Katherine Good (No. 5101)
Jesse A. Kitnick (*pro hac vice* pending)    R. Stephen McNeill (No. 5210)
**KATTEN MUCHIN ROSENMAN LLP**   Sameen Rizvi (No. 6902)
50 Rockefeller Plaza                  **POTTER ANDERSON & CORROON LLP**
New York, NY 10020              1313 N. Market Street, 6th Floor
Telephone: (212) 940-8800        Wilmington, DE 19801
Facsimile:  (212) 940-8776        Telephone: (302) 984-6000
Email: jerry.hall@katten.com       Facsimile:  (302) 658-1192
      michael.comerford@katten.com   Email: jryan@potteranderson.com
      jesse.kitnick@katten.com          kgood@potteranderson.com
                                  rmcneill@potteranderson.com
                                srizvi@potteranderson.com

Allison E. Yager (*pro hac vice* pending)   Yelena E. Archiyan (*pro hac vice* pending)
Kenneth N. Hebeisen (*pro hac vice* pending)  **KATTEN MUCHIN ROSENMAN LLP**
**KATTEN MUCHIN ROSENMAN LLP**   2121 N. Pearl Street, Suite 1100
525 W. Monroe Street              Dallas, TX 7201
Chicago, IL 60661                Telephone: (214) 765-3657
Telephone: (312) 902-5200        Facsimile: (214) 765-3602
Facsimile:  (312) 902-1061        Email: yelena.archiyan@katten.com
Email: allison.yager@katten.com
      ken.hebeisen@katten.com       *Proposed Counsel to Debtors*
                                  *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRITEK INTERNATIONAL INC., *et al.*,[1] | ) | Case No. 23-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS OF CRITICAL SUPPLIERS, LOGISTICS CLAIMANTS, PASA CLAIMANTS
AND SECTION 503(B)(9) CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, "Debtors") in the above-captioned cases (the "Chapter 11

Cases") for an order (i) authorizing, but not directing, Debtors, in their sole discretion, to pay

Critical Supplier Claims, Logistics Claims, PASA Claims and Section 503(b)(9) Claims; and

(ii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed

the Motion and the First Day Declaration and having heard the statements of counsel regarding

the relief requested in the Motion at a hearing before the Court (the "Hearing"); and the Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and this Court having found that venue of this proceeding and the Motion is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that Debtors' notice of the

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Tritek International Inc. (7919); HyLife Foods Windom, LLC (5391); and Canwin Farms, LLC (3973).  Debtors' mailing address is 2850 Highway 60 East, Windom, MN 56101.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Debtors are authorized, but not directed, in their sole discretion, to pay the Critical Vendor Claims, Logistics Claims, PASA Claims, and Section 503(b)(9) Claims; provided that such payments shall not exceed $3,200,000 on an interim basis in the aggregate, pending entry of a final order on the Motion.

3.      Except as otherwise provided herein, nothing in this Order impairs the rights of holders of PASA Claims to enforce their rights under PASA consistent with applicable law, or to seek redress from this Court with respect to their rights under PASA.

4.      Except as it relates to the payment of PASA Claims, Debtors, in their sole discretion, may require that any Critical Vendor provide written acknowledgement of its obligation to continue providing services to Debtors on Customary Trade Terms as a condition of receiving any payment pursuant to this Interim Order; *provided* that Debtors' failure to request such an acknowledgement shall not be, and shall not be deemed to be, a waiver of Debtors' rights hereunder.

5.      Nothing herein shall impair or prejudice Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor.  Debtors do not concede that any liens (whether contractual, possessory, common law, statutory or otherwise) or claims satisfied pursuant to this Interim Order are valid, and Debtors

expressly reserve all rights to contest the extent, validity or perfection or seek the avoidance of all such liens or the priority of such claims.

6.      All Banks are (i) authorized and directed to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by Debtors to pay prepetition obligations authorized to be paid hereunder, whether presented before, on or after the Petition Date; and (ii) prohibited from placing any hold on, or attempting to reverse, any automatic transfer related to the payment of prepetition obligations authorized to be paid hereunder.  The Banks shall rely on the representations of Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order without any duty of further inquiry and without liability for following Debtors' instructions.

7.      Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims referenced herein.

8.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, shall constitute or be construed as (i) an admission as to the validity of any claim against Debtors; (ii) a waiver of Debtors' rights to dispute the amount of, basis for, or validity of any claim against Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (iv) promise to pay any claim; (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between Debtors and any third party under section 365 of the Bankruptcy Code; or (vi) otherwise affecting Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

9.      Nothing contained in the Motion or this Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

10.     Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Order.

11.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

12.     The final hearing (the "Final Hearing") on the Motion shall be held on _____ __, 2023 at __:__ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____ ___, 2023 (the "Objection Deadline"), and shall be served on: (i) counsel for Debtors, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY 10020, Attn: Jerry L. Hall, Esq. (jerry.hall@katten.com); (ii) proposed Delaware counsel to Debtors, Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, 6th Floor, Wilmington DE, 19801, Attn: Jeremy Ryan, Esq. (jryan@potteranderson.com); (iii) counsel for the agent under Debtors' prepetition credit facility, Stinson LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, Attn: Adam Nathe (adam.nathe@stinson.com) and Edwin H. Caldie (ed.caldie@stinson.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19801, Attn: Matthew Ward (matthew.ward@wbd-us.com); (iv) counsel to Debtors' equity investors, Squire Patton Boggs, 2550 M Street, NW, Washington, DC 20037, Attn: Christopher J. Giaimo (christopher.giaimo@squirepb.com) and Latham &

Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C., 20004, Attn: Andrew Sorkin (andrew.sorkin@lw.com); (v) counsel to any statutory committee appointed in these Chapter 11 Cases; and (vi) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov).  If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without any further notice of a hearing.

13.    Nothing in the Motion or this Order shall be deemed to authorize Debtors to make any payments not otherwise due prior to the Final Hearing.

14.    Notwithstanding anything to the contrary in the Motion or this Order, Debtors' authority pursuant to this Order is subject to and must be consistent with the budget approved as part of any interim or final order approving use of cash collateral and/or post-petition financing.

15.    The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

16.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.    The terms and conditions of this Order are immediately effective and enforceable upon its entry.

19.    Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

20.    This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| TRITEK INTERNATIONAL INC., *et al.*,[1] | ) |
| | ) Case No. 23-_____ (___) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION**
**CLAIMS OF CRITICAL SUPPLIERS, LOGISTICS CLAIMANTS, PASA CLAIMANTS**
**AND SECTION 503(B)(9) CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, "Debtors") in the above-captioned cases (the "Chapter 11

Cases") for an order (i) authorizing, but not directing, Debtors, in their sole discretion, to pay

Critical Supplier Claims, Logistics Claims, PASA Claims and Section 503(b)(9) Claims; and

(ii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed

the Motion and the First Day Declaration and having heard the statements of counsel regarding

the relief requested in the Motion at a hearing before the Court (the "Hearing"); and the Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and this Court having found that venue of this proceeding and the Motion is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that Debtors' notice of the

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Tritek International Inc. (7919); HyLife Foods Windom, LLC (5391); and Canwin Farms, LLC (3973). Debtors' mailing address is 2850 Highway 60 East, Windom, MN 56101.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Debtors are authorized, but not directed, in their sole discretion, to pay the Critical Vendor Claims, Logistics Claims, PASA Claims, and Section 503(b)(9) Claims; provided that such payments shall not exceed $3,750,000 on a final basis in the aggregate.

3.      Except as otherwise provided herein, nothing in this Order impairs the rights of holders of PASA Claims to enforce their rights under PASA consistent with applicable law, or to seek redress from this Court with respect to their rights under PASA.

4.      Except as it relates to the payment of PASA Claims, Debtors, in their sole discretion, may require that any Critical Vendor provide written acknowledgement of its obligation to continue providing services to Debtors on Customary Trade Terms as a condition of receiving any payment pursuant to this Final Order; *provided* that Debtors' failure to request such an acknowledgement shall not be, and shall not be deemed to be, a waiver of Debtors' rights hereunder.

5.      Nothing herein shall impair or prejudice Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor.  Debtors do not concede that any liens (whether contractual, possessory, common law, statutory or otherwise) or claims satisfied pursuant to this Final Order are valid, and Debtors

expressly reserve all rights to contest the extent, validity or perfection or seek the avoidance of all such liens or the priority of such claims.

6.      All Banks are (i) authorized and directed to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by to pay prepetition obligations authorized to be paid hereunder, whether presented before, on or after the Petition Date; and (ii) prohibited from placing any hold on, or attempting to reverse, any automatic transfer related to the payment of prepetition obligations authorized to be paid hereunder.  The Banks shall rely on the representations of Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order without any duty of further inquiry and without liability for following Debtors' instructions.  Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims referenced herein.

7.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, shall constitute or be construed as (i) an admission as to the validity of any claim against Debtors; (ii) a waiver of Debtors' rights to dispute the amount of, basis for, or validity of any claim against Debtors; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (iv) promise to pay any claim; (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between Debtors and any third party under section 365 of the Bankruptcy Code; or (vi) otherwise affecting Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

8.      Nothing contained in the Motion or this Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

9.      Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Order.

10.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

11.     Notwithstanding anything to the contrary in the Motion or this Order, Debtors' authority pursuant to this Order is subject to and must be consistent with the budget approved as part of any interim or final order approving use of cash collateral and/or post-petition financing.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.